THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**IRIS CRUZ-RAMOS,** *et al.,*

   *Plaintiffs,*

v.

**TORO VERDE CORP.,** *et al.,*

   *Defendants.*

Civ. No. 21-1078 (MAJ)

**OPINION AND ORDER**

### I.   Introduction

On February 16, 2021, Iris Cruz-Ramos ("co-plaintiff Cruz-Ramos") and her husband Carlos Cruz ("co-plaintiff Cruz") (collectively "Plaintiffs") filed a "slip and fall" negligence action against Toro Verde Corp. and Universal Insurance Company (collectively "Defendants") under Article 1802 of the Puerto Rico Civil Code.[1] On June 12, 2023, the Court held the first day of trial. At the close of Plaintiff's case in chief, Defendants filed a Rule 50(a) Motion for Judgment as a Matter of Law. The Court recessed for the scheduled second day of trial to rule on the motion. That same day, Defendants filed a Supplemental Motion to their Rule 50(a) motion (**ECF No. 35**), and thereafter, Plaintiffs offered an Opposition to Defendants' Rule 50 motion (**ECF No. 36**). On June 14, 2023, the Court granted from the bench Defendants' Rule 50(a) Motion for Judgment as a Matter of Law. This opinion and order now follows.

---

[1] As the events took place before the new Puerto Rico Civil Code came into effect on November 28, 2020, they are subject to the Puerto Rico Civil Code of 1930.

## II. Jury Trial

On June 12, 2023, the jury trial began. Plaintiffs offered their own account, as well as the testimonies of Mr. William Sierra and Mrs. Migdalia "Dolly" Roman-Sierra (collectively the "Sierras"). The Sierras were present at the time Plaintiff Cruz-Ramos allegedly fell and sustained injuries at Defendant's property, "Toro Verde Adventure Park", an amusement resort located in Orocovis, Puerto Rico. The following items were admitted into evidence: an aerial photograph of the Toro Verde premises (Joint Exhibit No. 1); the incident report co-plaintiff Cruz completed at the scene of the accident (Joint Exhibit No. 2); medical records detailing co-plaintiff Cruz-Ramos' physical therapy sessions and relevant charges (Plaintiffs' Exhibit No. 1); and a photograph of co-plaintiff Cruz-Ramos' ankle post-surgery (Plaintiffs' Exhibit No. 2). Notably, regarding the accident site, there were neither photos nor expert witness testimony presented at trial regarding the site's state or purported risk.

The following relevant facts were testified to during the Plaintiffs' case in chief. On July 28, 2019, Plaintiffs visited the Toro Verde Adventure Park. (Transcript at 46:25-47:4). Upon arrival, Plaintiffs and the Sierras were directed by Defendant Toro Verde staff to park in the lower parking lot because the upper main lot was full. (Transcript at 22:1-14). Thereafter, Plaintiffs and the Sierras walked up a back pathway to reach the park's main entrance. (Transcript at 7:4-22). After ziplining, the Plaintiffs and the Sierra's walked back to their cars using the same back pathway they used to access the park's main entrance. (Transcript at 6:1-5). On their way down, co-plaintiff Cruz-Ramos slipped and fell, breaking her ankle.[2] (Transcript at 4:5-8).

---

[2] Co-plaintiff Cruz-Ramos testified that as a result of her fall, she broke her tibia, fibula, foot, and "maybe [] two toes." (Transcript at 53:22-23). She testified she was forced to get "nine or ten screws" and a plate on the right side of her ankle via surgery as well. (Transcript at 53:24-25).

Below is an outline of the relevant facts Plaintiffs' four lay witnesses testified to, in the order they were presented, namely: Mr. William Sierra ("Mr. Sierra"), Mrs. Migdalia "Dolly" Roman-Sierra ("Mrs. Sierra"), co-plaintiff Cruz, and co-plaintiff Cruz-Ramos.

### a. Mr. Sierra's Testimony

When asked how the group returned to their vehicle at Toro Verde after ziplining, Mr. Sierra answered that they used the same path as when they arrived; that they had gone up a hill coming and went down the hill going. (Transcript at 6:1-5). He testified that he was aware of a sidewalk next to the main road, but that the hill path was the shortest route to Toro Verde's entrance. (Transcript at 13:18-20, 14:16-15:1). When asked if he noticed a "No Pase" or "No Passing" sign, Mr. Sierra said he did not believe he saw one. (Transcript 18:20-19:11).

Mr. Sierra described the pathway as gravel road, "a dirt road covered with . . . stones and pebbles." (Transcript at 11:7-10). When asked to be more descriptive, Mr. Sierra responded by saying: "[r]ocks, small pebble stones, the type that you throw in the water that skip, similar to that." (Transcript at 11:11-13). Notably, Mr. Sierra also testified that there was at least "half a dozen to a dozen people" also using the path in front of and behind Plaintiffs' group. (Transcript at 7:18-9:4).

Mr. Sierra testified that there were no obstacles along the path that the group took, and that a pickup truck stationed along the path, presumably manned by employees, did not stop the guests from using the path or warn them against its use. (Transcript at 10:6-17). Importantly, when asked if Mr. Sierra had any hesitation using the pathway, he said no. (Transcript at 11:23-25). He simply stated that it was the closest entryway to Toro Verde. (Transcript at 12:1-6).

### b. Mrs. Sierra's Testimony

Mrs. Sierra described the path Plaintiffs and the Sierras took to Toro Verde's main entrance as consisting of "gravel." (Transcript 26:16-17). She testified that there were no signs or obstructions that she could see attempting to bar their entrance, and that when Plaintiff Iris Cruz-Ramos fell, she successfully ran back up the hill to get first aid or an ice pack for her. (Transcript at 23:16-19); (Transcript at 24:12-25:6). Notably, when asked if she would describe the path as dangerous, Mrs. Sierra answered "[n]o." (Transcript at 26:10-15).

### c. Co-plaintiff Carlos Cruz' Testimony

Co-plaintiff Carlos Cruz testified that he did not recall if the gravel pathway or front entrance was used, but he did recall that Plaintiff's group followed the path of people walking up to Toro Verde. (Transcript at 29:17-30:2). When asked how Plaintiff's group left Toro Verde for the parking lot, co-plaintiff Cruz said that they exited through the back and went down the dirt gravel road. (Transcript at 31:9-15). Co-plaintiff Cruz said that there were other people in front of and behind Plaintiffs' group as they went down the hill. (Transcript at 31: 16-19). He described the gravel pathway as "just basically a - - it was a little hilly. Again, it was just gravel rocks, stones. It wasn't fully paved. It was just like little spots here and there, there was a little black tar. I can't recall right now." (Transcript at 34:14-20).

When asked if anything blocked access to the gravel pathway, co-plaintiff Cruz answered "No. There was no barriers at all blocking from anyone passing, either coming up or going down the gravel road. No one there to state you can't pass this way, you can't go this way. You gotta go through another exit. No one at all." (Transcript at 34:21-35:2).

He further testified that there were no signs stating no passing, or anything similar. (Transcript at 35:3-5).

Most importantly, when asked whether the hill was dangerous, co-plaintiff Cruz echoed Mrs. Sierra's response and said, "I didn't think it was dangerous like that, but it was just a rocky, gravel road." (Transcript at 41:7-16). He further testified "Um, I can't say it was dangerous, but it was dangerous to my wife when she fell." (Transcript at 41:10-20).[3]

### d. Co-plaintiff Iris Cruz-Ramos's Testimony

When asked how she got to the main building of Toro Verde, co-plaintiff Cruz-Ramos said that her group followed the crowd and that she did not see a sidewalk. (Transcript at 48:21-49:4). She stated that neither she nor her group saw any obstructions or signs on the path. (Transcript at 49:5-10). Furthermore, when co-plaintiff Cruz-Ramos was asked "[n]ow, when you climbed that pathway and reached the main building, what, if anything happened?" she answered "[w]ell, first of all, I didn't climb. It wasn't something that we had to climb. We just walked a little hill and then just came down. But it's not something that we had to climb." (Transcript at 49:11-16).

---

[3] To the extent co-plaintiff Cruz simply affirmed during cross examination that the Complaint stated co-plaintiff Cruz-Ramos fell due to the "terrible and unstable condition of the trail", this is but a mere allegation and not evidence. *Anchante v. McDonough*, 18cv-1855, 2023 WL 3727528, at *4 (D.P.R. May 30, 2023) ("[The plaintiff] merely cited to her own Amended Complaint, which is not probative of any conduct, and on the contrary, is precisely what [the plaintiff] must prove with direct evidence."); *Geshke v. Crocs, Inc.*, 740 F.3d 74, 78 (1st Cir. 2014) ("[U]nverified allegations in a complaint are not evidence[.]"); *Rodriguez-Severino v. UTC Aerospace Sys.*, 52 F.4th 448, 460–61 (1st Cir. 2022) (distinguishing the admissibility of statements made in a complaint from those in an EEOC complaint, which is signed under penalty of perjury, and thus admissible as evidence). Regardless, were it even considerable, this would not constitute "more than a mere scintilla of evidence" as required to defeat a Rule 50 motion. *Hoffman-Garcia*, 2018 WL 671200, at *2, *aff'd*, 918 F.3d 227 (1st Cir. 2019); *Peguero-Moronta v. Santiago*, 464 F.3d 29, 34 (1st Cir. 2006) (stating that the totality of the evidence is evaluated when deciding whether to permit a plaintiff's case to go to the jury).

When co-plaintiff Cruz-Ramos was asked if she was drinking alcohol when she went down the pathway, she said that someone gave her a vodka cranberry and that she believed she took "like a sip," and that she remembered "takin a sip of the drink and then . . . slipping." (Transcript at 50:16-51:12). In explaining why she fell, she answered "I was just talking to my [*comay*,] we were just like conversating, [sic] and I slipped. Like there was gravel. I'm like - - I'm a city girl. Like I don't - - there isn't a lot of gravel streets or stuff like that where I come from, you know. I mean, I was just walking down the gravel road and I just slipped I just - - my ankle twisted inward and then I fell on top of it. It was just - - I slipped." (Transcript at 51:13-22).

Most importantly, when asked if she agreed with the other witness testimonies that the path was not dangerous, co-plaintiff Cruz-Ramos answered "If that's their opinions, then I would have to agree with that. But that's their opinions." (Transcript 69:6-15).

### III. Legal Standard

Rule 50 allows a litigant in a trial by jury to move the Court "for judgment as a matter of law at 'any time before the case is submitted to the jury.'" *Falto De Román v. Mun. Gov't of Mayagüez*, 46 F.4th 51, 55 (1st Cir. 2022) (quoting *Jones ex rel. United States v. Mass. Gen. Hosp.*, 780 F.3d 479, 487 (1st Cir. 2015)).

Under Rule 50, a court should render judgment as a matter of law when "a party has been fully heard on an issue, and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 149 (2000); Fed. R. Civ. P. 50(a).

When deciding a motion for judgment as a matter of law under Fed. R. Civ. P. 50, the "district court 'must examine the evidence, and inferences to be drawn therefrom, in

the light most favorable to the non-movant.'" *Cardona-Martinez v. Rodriguez-Quinones*, 444 F.3d 25, 28 (1st Cir. 2006) (quoting *Mangla v. Brown Univ.*, 135 F.3d 80, 82 (1st Cir. 1998)).

The standard for evaluating the sufficiency of the evidence under Rule 50 is the same as the standard for reviewing a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986) (standard for granting summary judgment "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.").

Under this standard, for the Court to submit an issue to the jury, the opposing party to a Rule 50 motion must provide "more than a mere scintilla of evidence." *Hoffman-Garcia v. Metrohealth, Inc.*, 14-cv-1162, 2018 WL 671200, at *2 (D.P.R. Jan. 31, 2018), *aff'd*, 918 F.3d 227 (1st Cir. 2019). The party opposing a Rule 50 motion may not rely on conjecture or speculation. *Id.*; *see also Barkan v. Dunkin' Donuts, Inc.*, 627 F.3d 34, 39 (1st Cir. 2010) ("A non-moving party with the burden of proof must, however, 'present "more than a mere scintilla" of evidence and may not rely on conjecture or speculation.'" (quoting *Katz v. City Metal Co.*, 87 F.3d 26, 28 (1st Cir. 1996))).

Moreover, the Court is prohibited from considering the credibility of witnesses, resolving credibility conflicts in testimony, or weighing the evidence. *See Baum-Holland v. El Conquistador Partn., L.P., S.E.*, 336 F. Supp. 3d 6, 27 (D.P.R. 2018), *aff'd sub nom. Baum-Holland v. Hilton El Con Mgt., LLC*, 964 F.3d 77 (1st Cir. 2020) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." (quoting *Reeves*, 530 U.S. at 150)).

For a court to grant a Rule 50 motion for judgment as a matter of law, it must determine that the evidence presented in the case is such that only one reasonable conclusion can be reached by a jury. In other words, the evidence must be "such that reasonable minds could not differ as to the outcome." *Mangla,* 135 F.3d at 82 (quoting *Rolón-Alvarado v. Municipality of San Juan*, 1 F.3d 74, 77 (1st Cir. 1993)).

The First Circuit has been quite stringent when holding that, under a Rule 50 standard, the district court must "determine whether there are facts and inferences reasonably drawn from those facts which lead to but one conclusion – that there is a total failure of evidence to prove plaintiff's case." *Vázquez Valentín v. Santiago Díaz*, 385 F.3d 23, 30 (1st Cir. 2004) (quoting *Mayo v. Schooner Capital Corp.*, 825 F.2d 566, 568 (1st Cir. 1987)), *vacated*, 546 U.S. 1163 (2006).

"If instead fair-minded persons could draw different inferences from the evidence presented at trial, the matter is for the jury." *Barkan,* 627 F.3d at 39 (quoting *Espada v. Lugo*, 312 F.3d 1, 2 (1st Cir. 2002)).

## IV. Applicable Law

### a. Negligence under Puerto Rico Law

Article 1802 of the Puerto Rico Civil Code states that "a person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." 31 L.P.R.A § 5141. Under Article 1802, a plaintiff suing for personal injuries must prove four elements: "(1) a duty requiring the defendant to conform to a certain standard of conduct, (2) a breach of that duty, (3) proof of damage, and (4) a causal connection between the damage and the tortious conduct." *Blomquist v. Horned Dorset Primavera, Inc.*, 925 F.3d 541, 547 (1st Cir. 2019) (quoting *Woods-Leber v. Hyatt Hotels*

*of P.R., Inc.*, 124 F.3d 47, 50 (1st Cir. 1997)). Failure to prove any element is fatal to a plaintiff's claim.

### b. *Negligent Maintenance and the Role of Foreseeability*

With regards to premises liability claims specifically, Puerto Rico law recognizes two distinct types of breaches in premises liability cases: negligent design and negligent maintenance.[4] *Martínez-Suárez v. Mansiones de Garden Hills Apartments*, 556 F. Supp. 3d 1, 15 (D.P.R. 2021) (citing *Cedeño Nieves v. Aerostar Airport Holdings LLC*, 251 F. Supp. 3d 360, 367 (D.P.R. 2017)), *appeal dismissed*, 21-1808, 2022 WL 1087021 (1st Cir. Jan. 6, 2022). The First Circuit has explained that "a negligent maintenance case is one based on 'allegedly dangerous conditions on commercial property . . . [which] require a showing that the defendant knew of or should have foreseen the risks created by the condition.'" *Martínez-Suárez*, 556 F. Supp. 3d at 15 (quoting *Vázquez-Filippetti v. Banco Pop. de Puerto Rico*, 504 F.3d 43, 50 (1st Cir. 2007)). The requisite gauge for foreseeability "is that the risk that must be foreseen must be based on probabilities and not mere possibilities." *Vázquez-Filippetti*, 504 F.3d at 53–54 (emphasis added) (quoting *Woods-Leber v. Hyatt Hotels of Puerto Rico, Inc.*, 951 F. Supp. 1028, 1036 (D.P.R. 1996) aff'd, 124 F.3d 47 (1st Cir. 1997)). Thus, the mere occurrence of an accident does not automatically mean that the requisite foreseeability is met. *Vázquez-Filippetti v. Banco Pop. de Puerto Rico*, 504 F.3d 43, 53–54 (1st Cir. 2007) (citing *Woods-Leber*, 951 F. Supp. at 1039).

To elaborate, "businesses are not absolute insurers of their patrons' safety." *Cedeño Nieves*, 251 F. Supp. 3d at 367 (citing *Cotto v. Consol. Mut. Ins. Co.*, 16 P.R. Offic.

---

[4] Plaintiffs do not contest a negligent design claim occurred, nor can the Court construe their case in chief to be so. Therefore, the Court will evaluate Plaintiffs claim under the negligent maintenance standard.

Trans. 786, 793-94 (P.R. 1985)); *see also Mas v. United States*, 984 F.2d 527, 530 (1st Cir. 1993) (reviewing Puerto Rico Supreme Court precedent and holding that Article 1802 negligence requires an affirmative showing of defendant's "actual or constructive knowledge of [a] dangerous condition."); *Calderon-Ortega v. U.S.*, 753 F.3d 250, 254 (1st Cir. 2014) ("Stripped of rhetorical flourishes, the plaintiff's real complaint is that the district court did not hold the defendant liable as an insurer of the plaintiff's safety. But even though an owner or occupier of commercial premises must exercise due care for the safety of its patrons, it is not liable in tort without a showing of fault." (citing *Vázquez-Filippetti*, at 49)); *cf. Vázquez-Filippetti*, at 50 ("When it comes to business establishments, the general rule is that although a business owner is not the absolute insurer of the safety of its patrons, the business owner has a duty to keep said establishment in a safe condition so that the clients do not suffer harm or damage." (quoting *Torres v. KMart Corp.*, 233 F. Supp. 2d 273, 277-78 (D.P.R. 2002))).

Thus, a commercial property's duty to maintain a safe environment links to the concept of foreseeability. *See Cedeño Nieves*, at 367. Stated differently, "foreseeability is critical," and "relates to defendant's knowledge of the dangerous condition, whether actual (defendant knew) or constructive (defendant should have known)." *Id.* (first citing *Cotto*, 16 P. R. Offic. Transc. At 793-94; then citing *Mas*, 984 F.2d at 530; then citing *Calderon-Ortega*, 753 F.3d at 252-53; and then citing *Woods-Leber*, 124 F.3d at 51). Importantly, a plaintiff must first prove that a dangerous condition existed in the first place, before the knowledge and foreseeability inquiry becomes relevant. *Ayala Martinez v. Puerto Rico CVS Pharm., LLC.,* 19-cv-2098 (MEL), 2022 WL 1289356, at *4 (D.P.R. Apr. 29, 2022) (quoting *Ramos v. Wal-Mart*, 2005 TSPR 123 (P.R. Aug. 31, 2005)) ("Accordingly, to impose premises liability, 'the plaintiffs must prove—and the courts

have to determine—, in the first place, if a hazardous condition existed and, second, if the existence of such condition was of the knowledge of the defendant or if it could be imputed such knowledge.'").

Summarily, liability is imposed for "an injury caused by a dangerous preexisting condition within the [business] premises . . . if (1) the [business] knew or should have known of the condition, and (2) the [business] did not take the precautions of a prudent and reasonable person to avoid or remedy the foreseeable risks the condition created." *Blomquist*, 925 F.3d at 547 (first citing *Vázquez*, at 49; and then citing *Woods-Leber*, 124 F.3d at 51); *see also Mas*, at 530 (reviewing Puerto Rico Supreme Court precedent and holding that Article 1802 negligence requires an affirmative showing of defendant's "actual or constructive knowledge of a dangerous condition.").

## V. Analysis

As an initial matter, the burden is on Plaintiffs to prove every element of their case by a preponderance of the evidence. The first element of a negligence claim under Article 1802—as applied to this case—is that Defendant owed a duty of care to Plaintiffs. *Blomquist*, at 547. At the Rule 50(a) motion stage, Plaintiffs sworn testimony that they were patrons at Defendant Toro Verde on the day of the accident satisfies this first element. *See Calderon-Ortega*, at 252 ("In the case at hand, the first element of the claim is apparent: one who operates a business for profit undeniably owes a duty of reasonable care to business invitees." (citing *Cotto*, at 793)).

Thereafter, the burden remains with Plaintiffs to prove that Defendants breached their duty of care. *Id*. Viewing the witness' testimonies and the evidence on the record in the light most favorable to Plaintiffs, without considering credibility or weighing the evidence introduced at trial, Plaintiff has simply not demonstrated that a dangerous

condition existed, that her injury was foreseeable, or that Defendants had actual or constructive knowledge of the allegedly dangerous condition on their premises such that they are liable to her for the damages she suffered. *See, e.g.*, *Baum-Holland v. El Conquistador Partn., L.P., S.E.*, 336 F. Supp. 3d at 27 (granting summary judgment against plaintiffs that failed to submit evidence about defendant's involvement in plaintiffs' damages).

First, the record is devoid of any evidence that the gravel path Plaintiffs took was a dangerous condition such that her injury was foreseeable. When asked to describe the path, all four witnesses described it as a hilly, gravel pathway. None of the witnesses testified to any holes, steepness, water, or other conditions that would suggest the path was dangerous. *See Ayala Martinez,* 2022 WL 1289356, at *6 ("Plaintiff only explained that the hole or crack was 'damaged and uneven,' and making all reasonable inferences in Plaintiff's favor, this description alone is not enough evidence to lead a reasonable jury to conclude that the hole or crack in the CVS parking lot was of the quality or degree which would pose an unreasonable danger to a business visitor."). No pictures of the area where the accident occurred were introduced at trial, nor expert witness testimony as to the conditions of the pathway and its alleged dangerousness. In fact, co-plaintiff Cruz-Ramos stated that she did not have to "climb" the pathway, she just had to walk down the "little hill." (Transcript at 49:13-16). Plainly, the evidence proffered before the jury was simply that it was a gravel pathway, and a gravel pathway, in and of itself, is not dangerous. *See Mateo v. PGA Tour*, CIV.A 07-11596-RWZ, 2010 WL 745055, at *3 (D. Mass. Feb. 24, 2010) ("[T]he existence of an unpaved path on the [premises] is not, in and of itself, a defect in the property, and aside from the fact of the injury, plaintiff has adduced no evidence of a defect in the path.").

Furthermore, and of utmost importance, is that when directly questioned about whether it was a dangerous pathway or not, both Plaintiffs and one of their witnesses admitted that the pathway was not dangerous. When confronted with the question, Mrs. Sierra answered "no". (Transcript at 26:10-15). When posed with the same question, co-plaintiff Cruz answered, "I didn't think it was dangerous like that, but it was just a rocky, gravel road" as well as "Um, I can't say it was dangerous, but it was dangerous to my wife when she fell." (Transcript at 41:17-20). Finally, when asked if she agreed with the other lay witnesses that the path was not dangerous, co-plaintiff Cruz-Ramos answered, "If that's their opinions, then I would have to agree with that. But that's their opinions." (Transcript 69:6-15). Along the same vein, Mr. Sierra testified that he did not hesitate to take the path. (Transcript at 1:23-25).

Accordingly, albeit an awful accident, "Plaintiff . . . cannot rely on the mere fact that she fell as evidence that an unreasonably dangerous condition existed." *Ayala Martinez*, 2022 WL 1289356, at *6. Therefore, based on the witnesses description of the pathway as a non-dangerous pathway, which was the only evidence produced at trial, no reasonable jury could have found that Plaintiff's injury was foreseeable such that Defendants breached their duty of care to her as a patron at their establishment. *Baum-Holland*, 336 F. Supp. 3d at 20 ("These requirements cannot be satisfied unless the plaintiff proves that the injury was reasonably foreseeable, and, thus, could have been avoided had the defendant acted with due care." (quoting *Woods-Leber*, 123 F.3d at 50)). There is simply no evidence that alludes to, much less supports the notion that the path they took was dangerous.

Even if the Court were to find that a dangerous condition existed, the record is devoid of any evidence that Defendants had the requisite actual or constructive

knowledge of such condition. *Vázquez-Filippetti*, at 50 ("[A] plaintiff must prove that the defendant had actual or constructive knowledge of the dangerous condition that most likely than not caused the damage." (quoting *Torres*, 233 F. Supp. 2d at 278)). Plaintiffs did not introduce any evidence of such nature, such as that there had been other accidents on the pathway, and instead testified that other patrons took the same path without incident. *See* (Transcript at 7:20-22, 29:19-24, 48:23-25); *Vazquez-Filippetti*, at 50; *Woods-Leber*, 951 F. Supp. at 1038 ("The law is clear. Before liability may be imposed, … plaintiff must show that his or her injury was reasonably foreseeable, and the main way to demonstrate foreseeability is to point to similar incidents in the past that the defendant knew or should have known about.").

Therefore, while the Court empathizes with the impact this incident has had on Plaintiffs' lives, Plaintiffs cannot rely solely on the fact that co-plaintiff Cruz-Ramos fell as evidence of an unreasonably dangerous condition that Defendants failed to mitigate against. Simply put, the mere occurrence of an accident does not, in and of itself, prove negligence. *See Vázquez-Filippetti*, at 50; *see also Ayala Martinez*, at *6.

## VI. Conclusion

Accordingly, viewing the evidence presented in light most favorable to the Plaintiffs, for the reasons set forth above, Defendants' Rule 50(a) Motion for Judgment as a Matter of Law is GRANTED and Plaintiffs' case is DISMISSED WITH PREJUDICE.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 22nd day of June, 2023.

**S/ MARÍA ANTONGIORGI-JORDÁN**
**United States District Judge**